**Brenda GUNTER, Appellant–Plaintiff,**

v.

**VILLAGE PUB and Carol Reed Miller, Appellee–Defendants.**

**No. 10A01–9207–CV–244.**

Court of Appeals of Indiana, First District.

Jan. 25, 1993.

because there are material questions of fact about Village Pub's duty to protect Gunter from Carol Miller's attack. Because we find there are material questions of fact, we are required to reverse the grant of summary judgment.

## FACTS

The facts most favorable to Gunter, the non-movant, follow. On the night of August 14, 1987, Gunter arrived alone at the Village Pub sometime after 10:00 p.m. She ordered an alcoholic beverage, spoke to an old friend, Mike Sowders, and then sat down at a table by herself. Sowders was in the pub with Carol Miller. Gunter had been involved previously with Miller's former husband, and, although Gunter did not know Miller, Miller made it no secret that she disliked Gunter. Demonstrating her animosity, Miller approached Gunter's table two or three times to deliver harassing remarks. The first time Miller approached Gunter's table, Miller called Gunter a "bitch," and suggested Gunter must "want" Mike Sowders since she already had had one of Miller's men. Later, Miller advised Gunter that as a New Albany Police Department employee, she was going to have Gunter arrested when Gunter left the pub. Miller also laughed at Gunter and said Gunter was making a fool of herself by dancing with an unidentified man in the bar.

Angered by Miller's behavior, Gunter summoned the Village Pub's manager, Kamran Javid, and told him about Miller's comments and threat to have her arrested. Gunter claims Javid assured her he would talk to Miller, although Gunter never saw him do so. Sometime later, Gunter left her table and walked towards the restroom. As she strolled past Miller's table, a chair was pushed into her path. Gunter admits she looked directly at Miller, called her a "hussy,"[1] and walked into the restroom. *Record* at 188. Miller followed Gunter into the restroom and socked Gunter in the face. The blow broke Gunter's nose.

Mitchele J. Harlan, Harris, Harlan & Merideth, Jeffersonville, for appellant-plaintiff.

Sandra W. Lewis, Smith, Bartlett, Heeke & Carpenter, Jeffersonville, for appellee-defendants.

BAKER, Judge.

Plaintiff-appellant Brenda Gunter appeals the trial court's grant of summary judgment in favor of defendant-appellee Village Pub. Gunter raises one issue for our review which we restate as: whether the trial court erred when it granted Village Pub's motion for summary judgment

---

1. As defined in *Webster's Ninth New Collegiate Dictionary* 588 (1988), a "hussy" is a "a lewd or brazen woman" or "a saucy or mischievous girl."

Gunter's complaint alleged the pub negligently breached its duty to keep its property in a safe condition. Village Pub moved for summary judgment, and the trial court granted the motion. Gunter now appeals.

## DISCUSSION AND DECISION

### Standard of Review

Gunter argues the trial court erroneously granted Village Pub's motion for summary judgment because there were material questions of fact regarding the pub's duty to make its business premises safe for Gunter. In reviewing the propriety of the grant of summary judgment, this court applies the same standard employed by the trial court. *Hamilton v. Roger Sherman Architects Group, Inc.* (1991), Ind.App., 565 N.E.2d 1136, 1137. Summary judgment is proper when the designated pleadings, depositions, answers to interrogatories, admissions, and affidavits show no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Indiana DPW v. Hupp* (1992), Ind.App., 605 N.E.2d 768; Ind.Trial Rule 56(C). We resolve any doubt against the proponent of the motion, taking all facts properly asserted by the party opposing the motion as true.

## DUTY

■ Gunter's action hinges on Village Pub's duty of care, and we begin with a brief summary of duty law in Indiana. Before a defendant can be held liable in an action for negligence, the plaintiff must show the defendant had a duty to protect the plaintiff from the harm suffered. *T.S.B. v. Clinard* (1990), Ind.App., 553 N.E.2d 1253, 1255. Whether a duty existed is a question of law for the court, although questions of fact may be interwoven with this determination. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 369 n. 1. When addressing the duty issue, we must consider the nature of the relationship between the parties and whether the party being charged with negligence had knowledge of the situation or circumstances surrounding the relationship. *T.S.B., supra, at 1256.*

■ A duty may also be created by gratuitous or voluntary assumption. *Robinson v. Kinnick* (1989), Ind.App., 548 N.E.2d 1167, 1168, *trans. denied.* The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Id.* Whether a party assumed a duty and the extent of that duty are questions for the fact-finder. *Id.* Similarly, whether a party breached its duty is a factual question generally not appropriate for summary disposition. *See Douglass, supra,* at 370.

### Business Invitees

■ In Indiana, landowners have a duty to exercise reasonable care to make their premises safe for business invitees. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639. When the landowner is the proprietor of a tavern, the duty includes protecting patrons from reasonably foreseeable disorderly acts of other patrons. *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, 388. The proprietor is not the insurer of his or her patrons' safety, however. *Id.* "A duty to anticipate and to take steps to protect against a criminal act arises only when the *facts of a particular case* make it reasonably foreseeable that a criminal act is likely to occur." *Id.* at 388 (original emphasis). Relevant facts may include the assailant's behavior either on the day of the injury or on previous occasions. *Id.*

■ As Village Pub's invitee, Gunter asserts the pub had a duty to exercise reasonable care to make its business premises safe for her. That duty, she argues, included the duty to protect her from Miller's foreseeable attack. Even if Village Pub did not already have a duty to protect her from the attack, Gunter contends the pub assumed that duty when Javid promised to talk to Miller after Gunter told him about Miller's threats.

We agree with Gunter the evidence she designated to preclude summary judgment demonstrates issues of material fact which make summary judgment inappropriate in

this case. Gunter stated in her deposition that she told Village Pub's manager that a "blond headed lady," later identified to be Miller, had "threatened to have [Gunter] arrested and she called [Gunter] a bitch and she [approached Gunter's] table several times and [Gunter] didn't want any problems." *Record* at 187. Gunter also stated that upon reporting Miller's behavior to the manager, the manager assured her he would talk to Miller.

This evidence creates questions of fact about whether Village Pub assumed a duty to protect Gunter from Miller's blow and whether it was foreseeable the attack was likely to occur.[2] Regardless of this court's assessment of Gunter's likelihood of succeeding at trial, and without intentions of making Village Pub strictly liable for bar room brawls, the existence of the factual issues in this case make the grant of summary judgment in Village Pub's favor erroneous. *See Tucher v. Brothers Auto Salvage Yard* (1991), Ind.App., 564 N.E.2d 560, 562 (summary judgment is not appropriate merely because the non-movant appears unlikely to prevail at trial).

### *Provoked Attack*

■ Finally, we address Village Pub's argument it had no duty to protect Gunter from Miller's attack because Gunter provoked the attack when she called Miller a "hussy." In support of its theory, the pub cites *Prosser on Torts* § 61 at 401 (3rd Ed.) *cited with approval in Broadhurst v. Davis* (1970), 146 Ind.App. 329, 331, 255 N.E.2d 544, 545–46, for the proposition that a landowner has "no obligation to protect the invitee against dangers which are known to him, or which are so obvious or apparent to him that he may reasonably be expected to discover them." Applying Pro-

fessor Prosser's analysis here, Village Pub argues summary judgment was proper because Gunter assumed the risk of Miller's attack when Gunter disregarded the ill will she knew Miller felt towards her and provokingly called Miller a "hussy."

■ Village Pub's argument is unpersuasive. First, the pub misinterprets Indiana law. As our supreme court has enunciated, the duty of care a commercial business owes its invitees is not extinguished by its invitees' knowledge of the potential risks existing on the premises. *Douglass, supra,* at 370. While the comparative knowledge of the landowner and invitee is relevant when determining whether the landowner breached his or her duty, the invitee's knowledge is not relevant when determining whether a duty existed. *Id.* Accordingly, Gunter's knowledge of the risk Miller posed may be properly considered when determining whether Village Pub breached its duty of care towards Gunter. Contrary to Village Pub's artful argument, however, Gunter's knowledge of that risk cannot be used to extinguish the duty of care Village Pub owed Gunter in the first instance.

Village Pub's argument also fails because its assertions are replete with questions of material fact inappropriate for summary disposition. In light of the designated facts before us, for example, the issues of whether Gunter's name-calling was a provocative act, and, if it was, whether Gunter voluntarily incurred the risks of that act when she called Miller a "hussy" are both questions for the factfinder. *See Forrest v. Gilley* (1991), Ind. App., 570 N.E.2d 934, 936, *trans. denied* (the defense of incurred risk is normally a question for the trier of fact).

2. We disagree with Judge Hoffman's assessment of the facts in his dissenting opinion. Specifically, the record reveals Miller's threat of arrest was not the only information about Miller's behavior that Gunter reported to Village Pub. Gunter also told the pub that Miller called her a "bitch," approached her table several times, and Gunter did not want any problems. *Record* at 187. Based on this testimony, we believe there is a question of fact about whether Miller's attack was foreseeable.

To the extent Judge Hoffman argues a business owner must have knowledge of a patron's specific physical threats before that patron's attack will be considered foreseeable, we believe that standard is much too limiting, and is inconsistent with the case law. As this court enunciated in *Welch, supra,* at 388, evidence of ill will, belligerence, or even boisterousness may be sufficient to provide notice or warning that an attack is imminent.

The trial court's grant of summary judgment in Village Pub's favor is reversed, and the cause is remanded for further proceedings consistent with this opinion.

ROBERTSON, J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. It is unnecessary to determine whether Village Pub owed Gunter a duty to protect her from Miller's attack because Miller's attack was an unforeseeable event. As the majority notes, a duty to protect against a criminal act arises only when the facts of a particular case make it reasonably foreseeable that a criminal act is likely to occur. *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, 388. Here, Gunter's own deposition testimony shows that she told Village Pub's manager only that Miller had threatened to have her arrested, not that Miller had threatened to hit her. Consequently, there was nothing to alert the manager that Miller's attack was imminent or likely to occur. Therefore, I would affirm the trial court's entry of summary judgment in favor of Village Pub.