Steven **LINCKE** and Colleen Lincke,
Appellants–Plaintiffs,

v.

**LONG BEACH COUNTRY CLUB,**
Appellee–Defendant,

**William Rippey and Michael Rippey,**
Appellees–Defendants.

No. 46A03–9805–CV–213.

Court of Appeals of Indiana.

Dec. 4, 1998.

Rehearing Denied Feb. 9, 1999.

Saul I. Ruman, Thomas A. Clements, David M. Hamacher, Hammond, for Appellants–Plaintiffs.

R. Kent Rowe, Robert D. Truitt, Rowe & Rowe, South Bend, for Appellee–Defendant Long Beach Country Club.

John E. Hughes, Jack A. Kramer, Hoeppner, Wagner & Evans, Merrillville, for Appellee–Defendant William Rippey.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Steven and Colleen Lincke appeal the trial court's grant of summary judgment to Long Beach Country Club in their negligence action against Country Club.[1] We affirm.

### ISSUE

Whether summary judgment was improperly granted.

### FACTS

On August 7, 1995, Country Club held a father-son golf outing, and the course was crowded. Lester and Steven Lincke, father and son, were on the 8th hole in a foursome. William and Michael Rippey, father and son, were on the 6th hole in another foursome. These two holes were parallel, with tees and holes at opposite ends, and were separated by a rough approximately 80 to 100 feet wide. Steven went into the rough from the 8th hole fairway. Steven knew it was his responsibility to "stay alert," (R. 54), and knew there were golfers on the 6th hole tee, but he was trying to select a club for his shot. William struck his ball from the 6th hole tee, and it veered to the right into the rough and hit Steven.

In their action against Country Club, the Linckes claimed it owed Steven a duty to maintain its golf course in a reasonably safe condition by correcting any known dangerous conditions or warning him of such dangers, and that he had been injured as the proximate result of Country Club's breach of this duty. Country Club moved for summary judgment, claiming that with respect to the claim of a failure to maintain, the Club took remedial measures to address safety concerns about the two holes. Specifically, Country Club provided testimony of the greens committee chairman that his neighbor Michael Rippey had recommended a golf course architect to suggest corrections for a drainage problem the course had, and that the architect's recommendations had been implemented. Further, testimony of the president of the firm that implemented the recommended drainage project changes said those changes also "addressed" the "safety issues" involving holes #6 and #8. (R. 104). Having taken these measures, the Club asserted, it had "no reason to know or suspect that any dangerous condition remained." (R. 38). The trial court granted summary judgment to Country Club, and the Linckes (hereafter, "Steven") appeal.

### DECISION

Summary judgment is appropriate only if the designated evidentiary matter shows that

---

1. Their complaint also named golfers William Rippey and Michael Rippey as defendants; how- ever, this appeal concerns only the grant of summary judgment to Country Club.

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 513 (Ind. Ct.App.1994). Once the movant meets these two requirements, the burden shifts to the non-moving party to set forth specifically designated facts showing the existence of a genuine issue. *Id.*

■ On appeal from the grant of summary judgment,

we apply the same standard applicable in the trial court. We must consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without deciding its weight or credibility. Rational assertions of fact and reasonable inferences therefrom are deemed to be true. Any doubt about the existence of a fact or the inference to be drawn from it is to be resolved in favor of the nonmoving party. Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be affirmed.

*Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 562 (Ind.1992) (citing *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991)). To recover on a theory of negligence, a plaintiff must establish (1) a duty owed by the defendant to the plaintiff, arising from the relationship between the defendant and the plaintiff, (2) which was breached by the defendant, and (3) an injury to the plaintiff proximately caused by the breach. *Webb* at 995.

■ Although both parties note the scarcity of Indiana law on claims against golf courses and refer us to decisions by other jurisdictions, we find *Douglass v. Irvin,* 549 N.E.2d 368 (Ind.1990), provides the law applicable to the matter before us. A landowner is liable for harm caused to an invitee by a condition on the land only if the landowner (1) knows of or through the exercise of reasonable care would discover the condition and realize that it involves an unreasonable risk of harm to such invitees; (2) should expect that the invitee will fail to discover or realize the danger or fail to protect against it; and (3) fails to exercise reasonable care in protecting the invitee against the danger. *Id.* at 370. The determination of whether a landowner breached his duty of care to an invitee centers on an objective evaluation of the landowner's knowledge. *Id.* A grant of summary judgment is proper when there is no genuine issue of fact as to breach of duty. *Id.* at 371.

■ Steven contends that the trial court erred in its determination that the designated evidence did not establish Country Club's breach of its duty because the designated evidence was more than sufficient in this regard. Specifically, he asserts that the layout of hole No. 6 and hole No. 8 was dangerous based upon various aspects of testimony by Michael Rippey's deposition testimony. However, after review of this designated testimony, we cannot agree. Although there are general statements of criticism contained in Michael's testimony, he never expressly states that the configuration of hole No. 6 and hole No. 8 is dangerous. Further, he indicated that he "would not have wanted [his] father out there if [he] thought it was an unreasonably dangerous area," (R. 469), and he invited his father to play there that day. Moreover, he never stated that he had expressed to Country Club his critical sentiments about the configuration of these holes or any recommendations to Country Club about possible changes thereto. Even when construed most favorably to Steven, an "objective evaluation" of Michael's testimony does not suggest either that Country Club should have known that it was exposing a golfer on hole No. 8 to an unreasonable risk of harm or that Country Club should have known that Steven would not realize the possible danger of being struck by a ball hit by a golfer on hole No. 6. *See Douglass,* 549 N.E.2d at 370.

Steven also designated evidence to the trial court that he characterized as showing that balls were routinely sliced from the No. 6 tee onto the No. 8 fairway. We question the import of this contention inasmuch as it

appears undisputed that Steven was hit not on the fairway of No. 8 but while in the rough. Furthermore, our review of the evidence designated in that regard leads us to same conclusion that the trial court must have reached: the evidence did not indicate the purported routine slicing. Steven also described to the trial court Michael's experience with golf course management and as a golfer; however, Michael's own testimony indicated that he had neither been trained nor worked on golf course designs. Steven provided no testimony by an expert in golf course design to the effect that the course was negligently designed. Thus, Steven's response to Country Club's motion for summary judgment failed to meet his burden of setting forth specifically designated facts regarding a breach of its duty by Country Club, *see Hermann*, in that his designated evidence failed to show the existence of a genuine factual issue as to a breach of Country Club's duty. *See Douglass*, 549 N.E.2d at 371.

■ Steven next argues that based upon a certain report, Country Club knew of a danger in this part of the course and failed to act in that regard. The report, from the architect recommended by Michael with respect to Country Club's drainage problems, described an "ancillary" safety concern about holes No. 6 and No. 8 and recommended changes that addressed the "safety issues," but the report did not specify a correction for the problem of balls "slicing from No. 6 into No. 8." (R. 146). By implementing the report's recommendations, Steven contends, Country Club left the known danger of "slicing from No. 6 into No. 8" uncorrected. However, this argument about the inference that should be made based upon the report was not made to the trial court, and the actual portions of the report upon which the argument is based were not even mentioned in Steven's response to Country Club's motion for summary judgment. An argument cannot be presented for the first time on appeal. *Williams v. City of Indianapolis*, 558 N.E.2d 884, 887 (Ind.Ct.App.1990).

We affirm.

BAILEY, J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

While I concur fully with the majority, I write separately to emphasize the second prong of the test articulated in *Douglass v. Irvin*, 549 N.E.2d 368 (Ind.1990), which provides that the landlord is liable if he should expect the invitee will fail to discover or realize the danger or fail to protect against it. *Id.* at 370.

Any golfer in the rough of a hole which runs parallel to another should, as a matter of law, know the dangers of approaching golfers. To be surprised that approaching drivers hook or slice is akin to being surprised that not everyone shoots par.

We have said often that "there comes a point where this Court should not be ignorant as judges of what we know as men [or women]." *Willner v. State*, 602 N.E.2d 507, 509 (Ind.1992). This is a shining example of the application of that maxim.